**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

ANTHONY G. GILL,

                         Plaintiff,

       - v -                                           Civ. No. 9:02-CV-1460
                                                                       (FJS/RFT)

CHRIS PIDLYPCHAK, *Correction Officer* and
T.G. DYGERT, *Correction Officer*,

                         Defendants.

**APPEARANCES:**                                             **OF COUNSEL:**

ANTHONY G. GILL
Plaintiff, *pro se*
94-A-8208
Great Meadow Correctional Facility
Box 51
Comstock, New York 12821-0051

HON. ELIOT SPITZER                             DOUGLAS J. GOGLIA, ESQ.
Attorney General of the State of New York       Assistant Attorney General
Attorney for Defendants
The Capitol
Albany, New York 12224

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

**REPORT-RECOMMENDATION and ORDER**

**I.  INTRODUCTION**

*Pro se* Plaintiff Anthony Gill brings this civil action pursuant to 42 U.S.C. § 1983, alleging

Defendants violated his civil rights while he was incarcerated at the Auburn Correctional Facility.

Dkt. No. 1, Compl.[1]  Specifically, Gills alleges Defendants Pidlypchak and Dygert filed false misbehavior reports against him and harassed him in retaliation for the filing of numerous institutional grievances against them and a civil lawsuit against Pidlypchak for smoking violations. Compl., Pl.'s Statement of Facts.

Presently before the Court is Defendants' Letter-Motion requesting an order revoking Gill's *in forma pauperis* (IFP) status and conditionally dismissing this action pursuant to 28 U.S.C. § 1915(g) pending Gill's prompt payment of the statutory filing fee of $150.00.[2] Dkt. No. 35, Defs.' Lt.-Mot., dated June 19, 2006, at p. 1.  Gill opposes the motion.  Dkt. No. 38, Pl.'s Lt.-Resp., dated July 21, 2006.  For the reasons that follow, it is hereby recommended that the Order granting Gill's IFP status be **vacated** and that Defendants' Motion pursuant to § 1915(g) be **granted** unless Gill pays the filing fee of $150.00 **within thirty days (30) days** of the entry of the final order by the District Court.

## II.  DISCUSSION

### A.  28 U.S.C. § 1915

Under 28 U.S.C. § 1915, individuals may seek leave of the court to pursue their claims without prepayment of fees and costs and proceed with the litigation as a poor person or *in forma*

---

[1] On December 23, 2002, Defendants filed a Motion to Dismiss Gill's Complaint pursuant to FED. R. CIV. P. 12(b)(6) for failure to state a claim upon which relief can be granted.  Dkt. No. 6, Mot. to Dismiss.  By Order of the Honorable Joseph M. Hood, United States District Judge for the Eastern District of Kentucky sitting by designation, Defendants' Motion was granted dismissing Gill's complaint with prejudice.  Dkt. No. 17, Decision & Order, dated July 28, 2003.  Judgment was entered on August 1, 2003 and Gill appealed.  Dkt. Nos. 18 & 19, Notice of Appeal, dated Aug. 4, 2003.  The Second Circuit affirmed the District Court's dismissal of Gill's Eighth Amendment claim, but vacated the Judgment of the District Court dismissing Gill's First Amendment claim and remanded the action back to the District Court.  *Gill v. Pidlypchak*, 389 F.3d 379 (2d Cir. 2004).

[2] Although Defendants' Letter-Motion states $250.00 as the required filing fee for this action, Defs.' Lt.-Mot. at p. 1, "[D]efendants and their counsel acknowledge that the filing fee was $150.00 when this action was commenced, and their request that [P]laintiff be required to fully pay a filing fee of $250.00 to avoid the dismissal of this action was merely an oversight."  Dkt. No. 37, Defs.' Lt.-Reply, dated July 27, 2006, at p. 1.

*pauperis*. 28 U.S.C. § 1915(a)(1). The IFP statute enables prisoners to similarly apply for this privilege, and indeed, many, if not most, incarcerated individuals bringing suits have taken advantage of such opportunity. *Id*. at § 1915(a)(2). Also under this statute, a court may *sua sponte* dismiss a case if it determines that such action is (1) frivolous or malicious, (2) fails to state a claim on which relief may be granted, or (3) seeks monetary relief against a defendant who is immune from such relief. *Id*. at § 1915(e)(2).

Recognizing the potential for prisoner abuse and seeking to relieve congestion of patently frivolous prisoner suits, Congress enacted the Prisoner Litigation Reform Act (PLRA) of 1996, which renders several restrictions on a prisoner's ability to exploit the justice system. One such mechanism is the so-called "three strikes rule" which bars inmates from proceeding IFP after three or more previous claims, where the prisoner was granted IFP status, have been dismissed as "frivolous, malicious, or [for] fail[ing] to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." *Id*.

In recognizing the legitimate government interests fostered by the PLRA amendments, the Second Circuit stated that,

> [p]rior to the enactment of the *in forma pauperis* amendments, inmates suffered no economic disincentive to filing lawsuits. Indeed, the very nature of incarceration-- prisoners have substantial free time on their hands, their basic living expenses are paid by the state and they are provided free of charge the essential resources needed to file actions and appeals, such as paper, pens, envelopes and legal materials--has fostered a "'nothing to lose and everything to gain'" environment which allows inmates indiscriminately to file suit at taxpayers' expense. *See Anderson v. Coughlin*, 700 F.2d 37, 42 (2d Cir. 1983) (quoting *Jones v. Bales,* 58 F.R.D. 453, 463-64 (N.D.Ga. 1972), *aff'd,* 480 F.2d 805 (5th Cir. 1973).

*Nicholas v. Tucker* 114 F.3d 17, 20 (2d Cir. 1997).

In calculating which cases count towards the three strikes rule, a court may look to dismissals which predated the enactment of the PLRA. *Welch v. Galie*, 207 F.3d 130, 132 (2d Cir. 2000). The

Second Circuit has held such a calculation to be proper and constitutional given that the determination to revoke IFP status in no way affects the merits of the prisoner's case, but rather prevents the inmate from continuing suit without the payment of fees. *Id*.

### B. Gill's "Three Strikes"

As noted by the Second Circuit, Gill "is no stranger . . . to the federal courts." *Gill v. Pidlypchak*, 389 F.3d 379, 384 (2d Cir. 2004). He "has commenced at least 116 different [actions] against the State of New York, its executive agencies, and its officials and employees, *see Gill v. Calescibetta*, 00-CV-1553, Decision & Order, dated Aug. 5, 2004, at p. 3, n.2 (N.D.N.Y.); has filed at least thirty-nine (39) different lawsuits in district courts within the Second Circuit, *see* Defs.' Lt.-Mot., Supp. 4; and has initiated nineteen (19) suits, in addition to the pending action, in this District alone.[3] In fact, this Court has previously held that in light of Gill's experience in federal court and his overly litigious nature, he is not entitled to "the special solicitude afforded [to] *pro se* litigants[.]" *Gill v. Riddick*, 2005 WL 755745, at *2 (N.D.N.Y. Mar. 31, 2005).

When Gill commenced this action on November 20, 2002, he had already acquired at least

---

[3] *See* (1) *Gill v. LeFevre,* 85-CV-1534 (HGM/RWS) (closed on Jan. 17, 1992-failure to prosecute); (2) *Gill v. Padilla,* 88-CV-147 (NPM/RWS) (closed on Mar. 26, 1992-failure to prosecute); (3) *Gill v. Burch,* 94-CV-369 (FJS/DNH) (closed on Apr. 1, 1999-Defs.' Mot. for Summ. J. granted); (4) *Gill v. Kramer,* 98-CV-45 (FJS/GJD) (closed on Sept. 30, 1999-Stip. of Discont.); (5) *Gill v. Anderson,* 98-CV-1472 (LEK/GLS) (closed on Mar. 3, 2003-Defs.' Mot. for Summ. J. granted); (6) *Gill v. Gummerson,* 99-CV-761 (NAM/DEP) (closed on Aug. 20, 2003-Jury Verdict for Defs.); (7) *Gill v. Dann,* 00-CV-566 (NAM/RFT) (closed on Nov. 21, 2001-failure to prosecute); (8) *Gill v. Tuttle,* 00-CV-585 (DNH/DRH) (currently pending); (9) *Gill v. Doe,* 00-CV-983 (GLS/DEP) (closed on June 8, 2004-Defs.' Mot. for Summ. J. granted); (10) *Gill v. Calescibetta,* 00-CV-1553 (LEK/DEP) (currently stayed); (11) *Gill v. McGinnis,* 00-CV-1787 (LEK/RWS) (*habeas corpus* petition transferred to S.D.N.Y. on Dec. 19, 2000); (12) *Gill v. Smith,* 00-CV-1905 (FJS/GJD) (currently pending); (13) *Gill v. Butero,* 01-CV-82 (LEK/DRH) (closed on Apr. 30, 2003-Defs.' Mot. to Dismiss granted at trial); (14) *Gill v. Hoadley,* 01-CV-323 (FJS/DEP) (currently pending); (15) *Gill v. Steinberg,* 02-CV-82 (DNH/DEP) (closed on Feb. 19, 2004-Stip. of Discont.); (16) *Gill v. Pflueger,* 02-CV-130 (DNH/GJD) (closed on Jan. 30, 2003-Defs.' Mot. to Dismiss granted); (17) *Gill v. Coyne,* 02-CV-1380 (TJM/GHL) (closed on June 22, 2006-Defs.' Mot. for Summ. J. granted); (18) *Gill v. Erickson,* 02-CV-1573 (LEK/RFT) (transferred to S.D.N.Y. on Jan. 21, 2003); and (19) *Gill v. Riddick,* 03-CV-1456 (NAM/RFT) (currently pending).

three "strikes" for purposes of § 1915(g). A review of the cases cited in Defendants' Letter-Motion shows that Gill, while incarcerated or detained, brought actions on three or more occasions that were dismissed for "strike" reasons: *Gill v. Accettulli*, 92-CV-5039 (S.D.N.Y. July 8, 1992) (dismissed *sua sponte* as "lack[ing] an arguable basis either in law or in fact") (internal quotation marks and citations omitted); *Gill v. Anna M. Kross Center*, 92-CV-9326 (S.D.N.Y. Dec. 28, 1992) (dismissed *sua sponte* as "lack[ing] an arguable basis either in law or in fact") (internal quotation marks and citations omitted); *Gill v. LeFevre*, 85-CV-1534 (N.D.N.Y. Jan. 13, 1992) (dismissed for failure to prosecute pursuant to FED. R. CIV. P. 11); and *Gill v. Padilla*, 88-CV-147 (N.D.N.Y. Mar. 24, 1992) (dismissed for failure to prosecute pursuant to FED. R. CIV. P. 11).[4] Defs.' Lt.-Mot. at p. 2.

### C. Application of *Snider v. Melindez* and *DeLeon v. Doe*

Gill contends that § 1915(g) does not apply to him because the cases cited in Defendants' Letter-Motion as "strikes" do not meet the requirements set forth by the Second Circuit in *Snider v. Melindez*, 199 F.3d 108 (2d Cir. 1999) and clarified in *DeLeon v. Doe*, 361 F.3d 93 (2d Cir. 2004). Pl.'s Lt.-Resp. at pp. 2-3. According to Gill, the cited cases "fail to indicate w[h]ere dismissals [were] with prejudice or without prejudice as mandated in *Snider*." Pl.'s Lt.-Resp. at p. 3.

In *Snider v. Melindez*, the Second Circuit held that the "three strikes rule" was intended to

---

[4] In their Letter-Motion, Defendants' assert that "[i]n light of *Gill v. Eberhardt,* 04-CV-197Sc (W.D.N.Y. July 30, 2004), Gill is collaterally estopped from asserting that he has not accrued four 'strikes' by the end of 1992, and at least six 'strikes' in total." Defs.' Lt.-Mot. at p. 2, n.4; *see* Defs.' Lt.-Reply at p. 2. Defendants' concede, however, that two of six actions cited as "strikes" by the Western District in the *Eberhardt* decision, "*Gill v. Anderson* and *Gill v. Pflueger* [,] . . . were dismissed after this action was commenced, and therefore, do not count as 'strikes' for purposes of assessing whether Gill is entitled to IFP status[.]" Defs.' Lt.-Mot. at p. 2. Therefore, Defendants' rely on the remaining four cases to support their conclusion that Gill has acquired the requisite "three strikes" to revoke his IFP status. While the Court agrees with Defendants' conclusion, we do not rely on Defendants' estoppel reasoning as the *Eberhardt* case was not decided by the Western District until after Gill commenced this action. We, instead, engage in our own independent review of the cases cited in the *Eberhardt* decision.

apply to those "nonmeritorious suits dismissed with prejudice, not suits dismissed without prejudice for failure to comply with a procedural prerequisite." *Snider v. Melindez*, 199 F.3d at 111.[5] The Court noted in that case that there are a variety of procedural reasons for which a case may be dismissed *sua sponte* and such a dismissal does not necessarily render a determination on the merits as, for example, a dismissal for frivolousness would. *See id*. at 111-113. Indeed, the Supreme Court has directed that an action is frivolous when it is based on an indisputably meritless legal theory or presents factual contentions that are clearly baseless, thus such dismissal is one on the "merits" of the case. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989) (cited in *Welch v. Galie*, 207 F.3d 130, 132 (2d Cir. 2000)).

In *DeLeon v. Doe*, the Second Circuit, in upholding its ruling in *Snider*, reiterated that "district court judgments *should* clearly set forth the reasons for dismissal, including whether the dismissal is because the claim is frivolous, malicious, or fails to state a claim, whether it is because the prisoner has failed to exhaust an available administrative remedy, or for other reasons." 361 F.3d at 95 (emphasis in original) (internal quotation marks omitted). The Second Circuit further noted that "[t]hese judgment[s] should also state whether the dismissal is with prejudice or without," and that "[c]larifications of this sort 'will undoubtedly assist subsequent courts that must determine whether a plaintiff is barred from maintaining an action *in forma pauperis* by the three strikes rule of Section 1915(g).'" *Id*.

Gill's interpretation of *Snider* and *DeLeon* as they apply to the cases cited by the Defendants is flawed. First, although *Snider* is clear in its application to those cases dismissed on the merits,

---

[5] In *Snider*, the Second Circuit held that a pre-answer dismissal based upon a failure to exhaust administrative remedies is a dismissal for failure to comply with procedural prerequisites and such a non prejudicial dismissal does not count towards the "three strikes rule."

the Second Circuit does not mandate that district courts expressly use the language "with or without prejudice" in judgments of dismissal. The language used by the Second Circuit, specifically the term "should," indicates that the language is advisory or instructive rather than mandatory. If the Second Circuit had intended district courts to include this specific language, as Gill argues, it would have stated that the district courts "must" or "shall," which indicates a mandate or requirement.

Second, Gill's arguments display a crafty articulation of both the *Snider* and *Doe* cases as they apply to § 1915(g) strikes. Both cases addressed the issue of "whether the entry of a strike [under § 1915(g)] is properly considered ***at the time an action is dismissed***." *Id*. (citing *Snider v. Melindez*, 199 F.3d at 115) (emphasis added). While the Second Circuit expressed strong doubt about this issue in *Snider,* it decided the matter in *DeLeon* and held that "district courts should not issue these strikes one by one, in their orders of judgment, as they dispose of suits that may ultimately–upon determination at a proper time–qualify as strikes under the terms of § 1915(g)."[6] *Id*.

Here, Gill challenges four cases cited by the Defendants as "strikes." Pl.'s Lt.-Resp. at p. 3. Addressing these cases specifically in light of Gill's arguments and as noted above, we find that all four actions were dismissed on the merits and therefore, qualify as "strikes" against Gill for

---

[6] The Second Circuit in *DeLeon* based its holding on its rationale in *Snider*, which reads:

> The designation of strikes has no practical consequences until a defendant in a prisoner's lawsuit raises the contention that the prisoner's suit or appeal may not be maintained *in forma pauperis* pursuant to 28 U.S.C. § 1915 because the prisoner has accumulated three strikes. At that time, because a practical consequence turns on the answer to the question, a court will need to determine whether the prisoner should be charged with three strikes. Litigation over the issue at an earlier juncture would involve the courts in disputes that might never have any practical consequence.

*DeLeon v. Doe*, 361 F.3d at 95 (quoting *Snider v. Melindez*, 199 F.3d at 115).
The Second Circuit also stated that "[c]ontemporanous classification of dismissals as strikes or non-strikes at a time when the ruling has no immediate consequences may also lead district courts to undertake such classifications carelessly, and with inadequate explanation of why a given dismissal falls into one category and not the other." *Id*. (quoting *Snider v. Melindez*, 199 F.3d at 115, n.4).

purposes of the "three strikes rule."

Although the Southern District in deciding *Accettulli* and *Kross* did not expressly state that the cases were dismissed "with prejudice" in the orders of dismissal, the District Court dismissed Gill's claims in both cases because they "lack[ed] an arguable basis either in law or fact." *Gill v. Accettulli*, 92-CV-5039, Order of Dismissal, dated July 8, 1992, at p. 4 (S.D.N.Y.) (citing *Neitzke v. Williams*, 490 U.S. at 325); *Gill v. Anna M. Kross Center*, 92-CV-9326, Order of Dismissal, dated Dec. 28, 1992, at p. 2 (S.D.N.Y.) (citing *Neitzke v. Williams*, 490 U.S. at 325). Additionally, in *Kross*, the district court went on to "certify pursuant to 28 U.S.C. § 1915(a) that any appeal from this order would not be taken in good faith." *Kross,* 92-CV-9326, at p. 2. Most importantly, Gill himself concedes that both the *Accettulli* and *Kross* cases "were dismissed due to they lacked an arguable basis in law or in fact." Pl.'s Lt.-Resp. at p. 3. In light of these statements and Gill's concession, the dismissals of the claims in these cases were clearly on the merits, even though the court did not specifically use the language "with or without prejudice." Each of these cases would, therefore, qualify as "strikes" against the Plaintiff.

A review of the docket shows that both the *LeFevre* and *Padilla* cases were dismissed by the Northern District for failure to prosecute pursuant to Rule 11 of the Federal Rules of Civil Procedure.[7] By his own admission, Gill concedes that these two cases were dismissed pursuant to FED. R. CIV. P. 11. Irrespective of specific language used in the District's Decisions and Orders dismissing these actions, we find that a Rule 11 dismissal is a dismissal on the merits. Therefore, these two cases would also each qualify as "strikes" against the Plaintiff.

From the discussion and analysis above, it is clear that these types of dismissals are precisely

---

[7] A history of failure to prosecute is akin to the filing of a frivolous claim.

what Congress had in mind when it enacted the PLRA, hoping to discourage and limit the amount of *frivolous* lawsuits brought by prisoner litigants. Accordingly, the Court finds that Gill, while incarcerated or detained, had acquired at least three "strikes" at the time he commenced the present action.

### D.  Exception to the "Three Strikes Rule"

Notwithstanding prior dismissals, an inmate can overcome the "three strikes rule" and proceed with an action if the prisoner can show that he or she "is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g). This imminent danger exception, however, applies only to impending harms that existed at the time the complaint is filed, and not to those harms which already occurred. *Malik v. McGinnis*, 293 F.3d 559, 563 (2d Cir. 2002) ("[T]he language of § 1915(g) makes clear that the 'imminent danger' exception only applies to danger existing at the time the complaint is filed."). Based upon a review of Gill's Complaint, there is nothing to suggest that he was under imminent threat of serious physical injury at the time he filed his Complaint. While Gill raises this exception in his opposition to Defendants' Motion, his claim that he "was encountering impending harms at the time [he] filed this [C]omplaint due to [the fact that] he was still incarcerated at Auburn C[orrectional] F[acility]" is clearly insufficient to overcome the "three strikes rule." Pl.'s Lt.-Resp. at p. 2. Permitting a prisoner to defeat the "three strikes" bar by simply citing incarceration as the impending harm runs afoul of Congress' intent in enacting § 1915 and would essentially render the PLRA meaningless.

### E.  Revoking Gill's IFP Status

Gill argues that the Defendants are estopped from moving to revoke his *in forma pauperis* status because they failed to move for revocation during earlier proceedings, specifically in their

Rule 12(b)(6) Motion to Dismiss, filed on December 23, 2002, *see* Dkt. No. 6, in their Letters to the Court in support of their Motion to Dismiss, filed on April 24, 2003 and May 7, 2003, *see* Dkt. Nos. 14 & 15, during Plaintiff's oral deposition taken in May 2005, or in Defendants' Answer, filed on June 20, 2006.[8]  Pl.'s Lt.-Resp. at p. 4.

Contrary to Gill's suggestion, dismissal is not precluded by the fact that a litigant has already been granted IFP status. "When a court becomes aware of three prior strikes only after granting IFP status, the court may appropriately revoke that status and bar the complaint under § 1915(g)." *Polanco v. Burge*, 05-CV-651, Rep.-Rec. & Order, dated May 12, 2006, at p. 3 (N.D.N.Y) (citing *McFadden v. Parpan*, 16 F. Supp. 2d 246, 247 (E.D.N.Y. 1998)).

In light of the foregoing, it is recommended that the Order granting IFP status to Gill be **vacated** and that Gill's Complaint be dismissed unless Gill pays the filing fee of $150.00 **within thirty days (30) days** of the entry of the final order by the District Court.

### III. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that the Order granting Gill's IFP status (Dkt. No. 4) be **VACATED**; and it is further

**RECOMMENDED** that Defendants' Letter-Motion seeking dismissal of Gill's Complaint pursuant to 28 U.S.C. § 1915(g) (Dkt. No. 35) be **GRANTED** unless Gill pays the filing fee of

---

[8] Gill also cites applications made by the Defendants to the Second Circuit during his Appeal of Judge Hood's Order and Judgment, *see* Dkt. Nos. 17-19, wherein he alleges Defendants failed to move for revocation of his IFP status, which was granted by the Circuit on August 1, 2003. Pl.'s Lt.-Resp. at pp. 4-5. IFP status granted by the Second Circuit is separate and distinct from IFP status granted by the Northern District. Defendants' objections to IFP status granted by the Second Circuit are not relevant to Defendants' application before this Court and would have no bearing on his IFP status in this District. Further, any objections put forth by the Defendants' in papers submitted to the Second Circuit cannot be accessed or considered by this Court.

$150.00 **within thirty days (30) days** of the entry of the final order by the District Court; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action by regular mail.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a) & 6(e).

Date:   November 20, 2006
        Albany, New York

_____
RANDOLPH F. TREECE
United States Magistrate Judge